**E-FILED**
Wednesday, 20 July, 2005 01:51:36 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| JAIME MICHELLE MORRIS | ) | CIVIL NO. |
| Defendant. | ) | |

# COMPLAINT

Now comes, UNITED STATES OF AMERICA, by and through its attorneys, JAN PAUL MILLER, United States Attorney for the Central District of Illinois, and Assistant United States Attorney Bradley W. Murphy, and for its cause of action alleges that:

1. This is a civil action brought pursuant to 28 U.S.C. § 1345 to foreclose the hereinafter described mortgage or other conveyance in the nature of a mortgage (hereinafter called "mortgage") and to join the following persons as defendants:

   JAIME MICHELLE MORRIS

2. Attached as Exhibit "A" is a copy of the Mortgage, Exhibit "B" is a copy of the Promissory Note secured thereby, as Exhibit "C" is the Notice of Acceleration & as Exhibit "D" is a copy of the Affidavit of Abandonment.

3. Information concerning mortgage:

(A) Nature of instrument: Mortgage

(B) Date of mortgage: January 12, 2001

(C) Names of mortgagors: JAIME MICHELLE MORRIS

(D) Name of mortgagee: United States of America, United States Department of Agriculture

(E) Date and place of recording: January 12, 2001, recorded in Hancock County, Illinois

(F) Identification of recording: Recorded as Instrument No. 2001-171

(G) Interest subject to the mortgage: Fee Simple

(H) Amount of original indebtedness including subsequent advances made under the mortgage: $41,770.00

(I) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

1. Legal description of mortgaged premises:

Lots Four (4) and Five (5) in Block Two (2) Humphrey's Fifth Addition to the City of Hamilton, County of Hancock, State of Illinois

PIN No. 11-32-426-000
PIN No. 11-32-425-000

2. Common address or location of mortgaged premises:

960 Hickory Street, Hamilton, Illinois 62341

(J) Statement as to defaults and amount now due:

1. Date of Default is August 18, 2003.

2. Payments which have become due under the secured note are in default and arrears in the total amount of $12,439.84.

3. The total amount now due is $46,521.31 as of June 28, 2005, plus interest accrued thereafter, court costs, title costs and plaintiff's attorney fees. This amount due includes the total principal and interest due and payable, all outstanding advances and fees charged to the defendant(s) account and total subsidy received on the defendant(s) loans(s).

4. The per diem interest accruing under the mortgage after default is $7.5787.

(K) Name of present owner of the real estate: JAIME MICHELLE MORRIS

(L) Name or names of persons, in addition to such owners, but excluding any non-record claimants as defined in the Illinois Mortgage Foreclosure Law, Chapter 735 ILCS, Section 5/15-1210, who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

NA

a. That an accounting may be taken under the direction of the court of the Plaintiff's mortgage constitutes a valid, prior and paramount lien upon the indicated interest in the mortgaged real estate, which lien is prior and superior to the right, title, interest, claim or lien of all parties and non-record claimants whose interests in the mortgaged real estate are sought to be terminated.

(M) Names of defendants claimed to be personally liable for deficiency, if any:

JAIME MICHELLE MORRIS

(N) Capacity in which plaintiff brings this foreclosure: as the owner and legal holder of said note, mortgage and indebtedness.

(O) Facts in support of shortened redemption period, if sought: Ex. D, the plaintiff States the subject property has been abandoned as evidenced by the Affidavit of Abandonment and requests the redemption period be reduced to 30 days.

(P) Facts in support of request for costs and expenses, if applicable:

Plaintiff has been required to incur title insurance or abstract costs and other expenses which should be added to the balance secured by said mortgage.

(Q) Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and the identity of such receiver, if sought: NA

(R) Plaintiff does not offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations

secured by the mortgage without judicial sale.

(S) Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: JAIME MICHELLE MORRIS

4. As stated in the Affidavit attached hereto as Exhibit "D", the above-described property is abandoned.

REQUEST FOR RELIEF

Plaintiff requests:

(i) A judgment to foreclose such mortgage, ordering: amounts due and owing to the plaintiff;

b. That the defendants be ordered to pay to the plaintiff before expiration of any redemption period (or if no redemption period, before a date fixed by the court) whatever sums may appear to be due upon the taking of such account, together with fees and costs of the proceedings (to the extent provided in the mortgage or by law);

c. That in default of such payment in accordance with the judgment, the mortgaged real estate be sold as directed by the court, to satisfy the amount due to the plaintiff as set forth in the judgment, together with the interest thereon at the statutory judgment rate from the date of judgment;

d. That in the event the plaintiff is a purchaser of the mortgaged real estate at such sale, the plaintiff may offset against the purchase price of such real estate the amounts due under the judgment of foreclosure and order confirming the sale;

e. That in the event of such sale and the failure of the person entitled thereto to redeem prior to such sale pursuant to this Article, the defendants made parties to the foreclosure in accordance with this Article, and all non-record claimants given notice of the foreclosure in accordance with this Article, and all persons claiming by, through or under them, and each and any and all of them, may be forever barred and foreclosed of any right, title, interest, claim, lien or right to redeem in and to the mortgaged real estate; and

f. That if no redemption is made prior to such sale, a deed may be issued to the

purchaser thereat according to law and such purchaser be let into possession of the mortgaged real estate in accordance with 735 ILCS, Section 5/15-1701, et. seq.

ii) An order granting a shortened redemption period, if authorized by law.

iii) A personal judgment for a deficiency, if authorized by law.

iv) An order granting possession.

v) An order placing the mortgagee in possession or appointing a receiver.

vi) A judgment for fees, costs and expenses.

vii) Enforcement of its assignment of rents derived from said real estate.

viii) Such other relief as equity may require, including, but not limited to, declaratory and injunctive relief.

ADDITIONAL REQUEST FOR RELIEF

Plaintiff also requests that the judgment for foreclosure or other orders entered herein provide for the following (pursuant to 735 ILCS, Section 5/15-1506(f)):

i) Judicial sale conducted by the United States Marshal or his representative, at which the plaintiff is entitled to bid;

ii) Title in the real estate may be subject, at the sale, to exceptions including general real estate taxes for the current year and for the preceding year which have not become due and payable as of the date of entry of the judgment of foreclosure, any special assessments upon the real estate, and easements and restrictions of record;

iii) In the event a party to the foreclosure is a successful bidder at the sale, such party shall be allowed to offset against the purchase price to be paid for such real estate amounts due such party under the judgment of foreclosure or order confirming the sale.

UNITED STATES OF AMERICA, Plaintiff

JAN PAUL MILLER
UNITED STATES ATTORNEY

S/: BRADLEY W. MURPHY

Bradley Murphy
Assistant United States Attorney
One Technology Plaza
211 Fulton Street
Suite 400
Peoria, Illinois 61602
Tele: 309-671-7050
Fax No. 309-671-7259
brad.murphy@usdoj.gov

19514520

Instrument No. 2001-171

RECORDED
County of Hancock
State of Illinois
Date: Jan. 12, 2001
Time: 12:28 P.M.
Document No. 2001-171
Kerry Asbridge, ES.
Recorder

The form of this Mortgage was prepared by the Office of the General Counsel, United States Department of Agriculture and the material in the blank spaces was inserted by or under the direction of
Sharon S. Roberts
110 Buchanan Street
Carthage, IL. 62321

Fee 17.00 Pd.

[Space Above This Line For Recording Data]

Form RD 3550-14 IL
(Rev. 9-99)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR ILLINOIS

THIS MORTGAGE ("Security Instrument") is made on January 12, 2001. [Date]
The mortgagor is Jaime Michelle Morris, a Single Person never having been married ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 01/12/01 | $41,770.00 | 01/12/34 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrowers covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Hancock County, Illinois:

Lots Four (4) and Five (5) in Block Two (2) Humphrey's Fifth Addition to the City of Hamilton, County of Hancock, State of Illinois.

which has the address of 960 Hickory Street [Street] Hamilton [City], Illinois 62341 [ZIP] ("Property Address");

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*



Ex A

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional ~security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs I and 2 shall be applied in the following order of priority:
(I) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.
Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5. **Hazard or Property Insurance**. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds**. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property**. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers**. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices**. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. **Borrower's Copy**. Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this

Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual Knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (D any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future State laws prescribing any statute of limitations or limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under State law, the benefit of all State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the

time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, curtesy, and homestead.

**25. Riders to this Security Instrument**. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider ☐ Planned Unit Development ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

Jaime Michelle Morris (SEAL)* ______________________ (SEAL)*
Jaime Michelle Morris

## ACKNOWLEDGMENT

**STATE OF ILLINOIS**
**COUNTY OF** HANCOCK } **ss:**

**I,** Holly J. Morris **, a Notary Public, do hereby certify that** Jaime Michelle Morris **and** ______________________ **personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.**

**Given under my hand and official seal this** 12th **day of** January , 2001

Holly J. Morris
* *Notary Public*

**(SEAL)**

"OFFICIAL SEAL"
HOLLY J. MORRIS
Notary Public, State of Illinois
My Commission Expires 3-3-2003

**My commission expires** ______________________

**Print, stamp or typewrite the names of the mortgagors and the notary beneath their signatures.*

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 502

Loan No. 0019314320

Date: January 12 , 2001

960 Hickory
(Property Address)

Hamilton , Hancock , Illinois
(City or Town) (County) (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ 41,770.00 (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of 6.875 %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

[ ] I. Principal and interest payments shall be temporarily deferred. The interest accrued to ________ ,____ shall be added to the principal. The new principal and later accrued interest shall be payable in ________ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $____________, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

[X] II. Payments shall not be deferred. I agree to pay principal and interest in 396 installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 12th day of each month beginning on February 12, 2001 and continuing for 395 months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on January 12 , 2034 , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 267.12 . I will make my monthly payment at the post office address noted on my billing statement or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.





LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.



Account # 0019314320

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

Jaime Michelle Morris _____ Seal
Borrower
Jaime Michelle Morris

_____ Seal
Borrower

_____ Seal
Borrower

_____ Seal
Borrower

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 41,770.00 | 01/12/01 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 41,770.00 | |

Account #: 0019314320



**United States Department of Agriculture**

**Rural Housing Service**
*Centralized Servicing Center*
*P. O. Box 66827*
*St. Louis, MO 63166*



CERTIFIED MAIL
RETURN RECEIPT REQUESTED

JAIME MICHELLE MORRIS
960 HICKORY
HAMILTON IL 62341

SUBJECT: NOTICE OF ACCELERATION OF YOUR RURAL HOUSING SERVICE LOAN(S); DEMAND FOR PAYMENT OF THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION

Dear JAIME MICHELLE MORRIS

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you from the United States of America, acting through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers Home Administration, is now declared immediately due and payable and demand is hereby made on you to pay this entire indebtedness. If payment in full is not made as demanded herein, the RHS intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness by foreclosure of its lien(s) on your house.

| Account Number(s) | Date of Instruments | Amount |
|---|---|---|
| 0019314320 | 01/12/01 | 41770.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instrument(s). The reason(s) for the acceleration of your indebtedness is (are) as follows:

**MONETARY DEFAULT**

The balance of the account is $ 40658.35 unpaid principal and $1278.00 unpaid interest, as of 08/18/03, plus additional interest accruing at the rate of $7.6583 per day thereafter, plus additional advances to be made by the United States for the protection of its security, the interest accruing on any such advances, fees, or late charges, and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

Ex C



USDA is an Equal Opportunity Lender, Provider, and Employer.
Complaints of discrimination should be sent to: USDA, Director, Office of Civil Rights, Washington, DC 20250-9410

Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. Payment should be made by cashier's check, certified check, or postal money orders payable to the Rural Housing Service and mailed to the following address:

USDA-RHS
P. O. Box 790170
St. Louis, MO 63179-0170



If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than 09/02/03 . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s); (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.

You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Risk Management toll free at 1-800-793-8861 or TDD 1-800-438-1832, 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.

UNITED STATES OF AMERICA
BY

H. Neil McIntyre
Branch Chief
CSC - Chief, Collection Services Branch
Rural Housing Service
United States Department of Agriculture

Date: 08/18/03
Attachment
CC: State Office

This letter was mailed certified and regular mail on 08/18/03 .

*02000015604* L9051SSP

SO

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. |
| vs. | ) | |
| JAIME MICHELLE MORRIS | ) | |
| Defendant(s). | ) | |

AFFIDAVIT OF ABANDONMENT

Sharon R. Roberts, being first duly sworn on oath deposes and states that:

1. Deponent is employed by Rural Development, formerly known as Farmers Home Administration, which is the agency involved in this case; has personal knowledge of the matters herein; and is authorized to make this affidavit.

2. Deponent states that she has inspected the property at 960 Hickory, Hamilton, IL 62341, and found it to be abandoned. The property is described as follows:

Lots Four (4) and Five (5) in Block Two (2) Humphrey's Fifth (5th) Addition to the City of Hamilton, County of Hancock, State of Illinois.

3. Deponent further states that the property will fall into disrepair and be subject to waste and vandalism unless it is secured and preserved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 2-18-04

Sharon S. Roberts
Sharon S. Roberts, Community Development Specialist

